**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
David M. Bass, Esq.
Ryan T. Jareck, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
Attorneys for 710 Long Ridge Road
Operating Company II, LLC, *et al.*,
Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE DONALD H. STECKROTH
CASE NO. 13-13653 (DHS)

|  |  |
|---|---|
| In re:<br><br>710 LONG RIDGE ROAD OPERATING<br>COMPANY II, LLC, *et al.*,[1]<br><br>　　　　　　　Debtors-in-Possession. | Chapter 11<br>(Jointly Administered)<br><br>**APPLICATION IN SUPPORT OF**<br>**DEBTORS' MOTION FOR ORDER**<br>**AUTHORIZING THEM TO (I) ENTER**<br>**INTO LETTER AGREEMENT IN**<br>**CONNECTION WITH ANTICIPATED**<br>**EXIT FINANCING AND (II) INCUR**<br>**AND PAY RELATED FEES AND**<br>**EXPENSES AS ADMINISTRATIVE**<br>**EXPENSES**<br><br>**HEARING DATE AND TIME:**<br>December 5, 2013, at 10:00 a.m.<br><br>**ORAL ARGUMENT WAIVED UNLESS**<br>**OBJECTIONS TIMELY FILED** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are:  710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge of Stamford (4809), 240 Church Street Operating Company II, LLC d/b/a Newington Health Care Center (4730), 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center (4839), 245 Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center (4716) and 107 Osborne Street Operating Company II, LLC d/b/a Danbury Health Care Center (4676).

TO:    HONORABLE DONALD H. STECKROTH
       United States Bankruptcy Judge

The Application of 710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge

of Stamford, 240 Church Street Operating Company II, LLC d/b/a Newington Health Care

Center, 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center, 245

Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center and 107

Osborne Street Operating Company II, LLC, d/b/a Danbury Health Care Center, the within

debtors and debtors-in-possession (the "**Debtors**"), by and through their counsel, Cole, Schotz,

Meisel, Forman & Leonard, P.A., respectfully represents:

## INTRODUCTION AND JURISDICTION

1.       This Application is submitted in support of the Debtors' motion, pursuant to

Bankruptcy Code §§ 105(a), 363(b)(1), and 503(b)(1) and Bankruptcy Rules 2002(a)(2) and (c)

and 6004(h), for entry of an Order authorizing them to (i) enter into that certain letter agreement

in connection with anticipated exit financing and (ii) incur and pay related fees and expenses

(including any indemnification obligations) as administrative expenses.

2.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested

herein are Bankruptcy Code §§ 105(a), 363(b)(1), and 503(b)(1) and Bankruptcy Rules

2002(a)(2) and (c) and 6004(h).

## FACTUAL BACKGROUND

3.       On February 24, 2013 (the "**Filing Date**"), each of the Debtors filed a voluntary

petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy

Code**").  Since the Filing Date, each of the Debtors has remained in possession of its assets and

2

continued management of its businesses as a debtor-in-possession pursuant to Sections 1107 and

1108 of the Bankruptcy Code.

4.      On March 7, 2013, an official committee of unsecured creditors (the

"**Committee**") was appointed by the U. S. Trustee's Office and the Committee has retained

counsel.

5.      A detailed description of each Debtor's business and the facts precipitating the

filing of the Debtors' Chapter 11 proceedings are set forth in the Affidavit of Victor Matthew

Marcos in support of the Debtors' various "First Day Motions" [Docket No. 5].  Those facts are

also incorporated herein by reference.

6.      The Debtors are each a Delaware limited liability company with their principal

place of business and office located at 173 Bridge Plaza North, Fort Lee, New Jersey 07024.

Each Debtor operates a sub-acute and long-term nursing care facility (each a "**Facility**" and

collectively, the "**Facilities**") for the elderly in Connecticut.  The Facilities are: (i) Long Ridge of

Stamford, (ii) Newington Health Care Center, (iii) Westport Health Care Center, (iv) West River

Health Care Center, and (v) Danbury Health Care Center.  The Facilities are managed by

HealthBridge Management, LLC, a non-debtor national healthcare management company.

7.      The Facilities are skilled nursing facilities that provide long-term care and short-

term rehabilitation services.  For long-term-care patients who have medical needs, the Facilities

provide 24-hour-a-day nursing care, nutritional monitoring and planning, medication

management and personal care.  For individuals in need of nursing and/or rehabilitation services

following a recent hospitalization for orthopedic surgery, stroke, oncology care, cardiac care,

general surgery and other diagnoses, the Facilities offer medical and physical rehabilitation

including physical, occupational and speech therapy, rehabilitative nursing and physician

directed rehabilitation plans, IV therapy, wound care and other services.

8.      On March 22, 2013, the Debtors filed the *Debtors' Motion for Entry of Final*

*Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Rules 2002, 4001, and 9014 of*

*the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-4: (1) Authorizing Debtors to*

*Obtain Postpetition Financing on Superpriority and Secured Basis; and (2) Authorizing the*

*Continued Use of the Prepetition Lenders' Cash Collateral and the Verified Application in*

*Support of the Debtors' Motion for Entry of Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362,*

*363 and 364, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, and*

*Local Rule 4001-4: (1) Authorizing Debtors to Obtain Postpetition Financing on Superpriority*

*and Secured Basis, (2) Granting Final Relief, and (3) Authorizing the Continued Use of the*

*Prepetition Lenders' Cash Collateral* [Docket No. 164] (the "**DIP Motion**").

9.      On April 9, 2013, this Court entered that certain *Final Order Pursuant to 11*

*U.S.C. §§ 105, 361, 362, 363 and 364, Rules 2002, 4001, and 9014 of the Federal Rules of*

*Bankruptcy Procedure, and Local Rule 4001-4: (1) Authorizing Debtors to Obtain Postpetition*

*Financing on Superpriority and Secured Basis; and (2) Authorizing the Continued Use of Pre-*

*Petition Lenders' Cash Collateral* (the "**Final DIP Order**"), which Final Order authorized the

Debtors' entry into a Debtor In Possession Credit Agreement (the "**DIP Credit Agreement**") by

and between the Debtors and Capital One, National Association (together with its successors and

assigns, "**Capital One**") and approved the terms thereof.

10.     On April 26, 2013, the Debtors entered into the DIP Credit Agreement, whereby

Capital One agreed to provide financing to the Debtors consisting of revolving credit loans in an

aggregate amount up to $5,000,000.

4

11.     During these cases, certain Events of Default have occurred under the DIP Credit

Agreement (collectively, the "**DIP Defaults**").  See Docket Nos. 617, 634.  As a result of those

DIP Defaults, the Debtors have entered into two amendments to the DIP Credit Agreement, each

of which has been authorized and approved by the Court, and the DIP Defaults have been

waived.  See, e.g., Docket Nos. 619 and 637.

12.     The Debtors have recently filed a proposed Joint Chapter 11 Plan of

Reorganization of 710 Long Ridge Road Operating Company II, LLC, *et al.* (the "**Plan**")[2]

[Docket No. 606] and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code

for the Joint Chapter 11 Plan of Reorganization of 710 Long Ridge Road Operating Company II,

LLC, *et al.* (the "**Disclosure Statement**") [Docket No. 605].  A hearing to consider the adequacy

of the Disclosure Statement is currently returnable November 21, 2013.  See Order and Notice

on Disclosure Statement, entered October 23, 2013 [Docket No. 608].

**A.      The Plan**

13.     Under the Plan, if confirmed, the Debtors will pay Allowed Administrative

Expense Claims, Professional Compensation and Reimbursement Claims, Other Priority Claims

and DIP Loan Claims in varying time frames contemporaneously with the Effective Date.

14.     As set forth in Section 2.2.D. to the Plan, the Debtors intend to pay the DIP Loan

Claims either in Cash, to the extent sufficient cash proceeds are available from the Exit Credit

Facility (as defined below), or in some other manner acceptable to Capital One.

15.     All funds necessary to make the cash distributions required under the Plan at or

around the time of the Effective Date will be made either from Cash then on hand (which as of

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to
them in the Plan or the Exit Facility Term Sheet (as defined below), as applicable.

51689/0001-10041230v1

the Effective Date shall include the Plan Distribution Contribution Amount), or from the proceeds of the Exit Credit Facility.[3]

### B.      The Exit Credit Facility

16.      The Plan provides that the Reorganized Debtors will obtain exit financing pursuant to the New Credit Agreement (the "**Exit Credit Facility**").  The expected use of the proceeds from the Exit Credit Facility will be to: (a) satisfy the DIP Loan Claims and certain other Allowed Claims (such as Administrative and Other Priority Claims); (b) fund various emergence-related disbursements (such as the Professional Compensation and Reimbursement Claims) to the extent required; and (c) provide for the working capital needs of the Reorganized Debtors.  Thus, consummation of the Exit Credit Facility is critical to the Debtors' reorganization because the proceeds thereof are necessary to provide cash for funding their Plan and to fund the Reorganized Debtors' working capital needs.

### C.      The Debtors' Entry into the Exit Facility Term Sheet

17.      As set forth the DIP Motion, prior to the Filing Date, the Debtors, with the assistance of their advisors, canvassed the marketplace to find interested parties to participate in a debtor-in-possession financing facility.  See DIP Motion at ¶¶ 27-28.  Only one lender, Capital One, was even willing to make a proposal for DIP financing.  Id. at ¶ 28.

18.      Given the lack of financing options that previously existed, coupled with the progress of these cases thus far, including the DIP Defaults, the Debtors' operating results to date and the ongoing litigation and related appeals with the Union and the NLRB, and the fact that Capital One holds a "Right of First Refusal" as set forth at Section 5.23 of the DIP Credit

---

[3] The Debtors are exploring other potential sources of funding in addition to that currently provided under the DIP Credit Agreement.  To the extent those discussions result in an agreement, a separate motion will be filed seeking authority for such borrowings.

51689/0001-10041230v1

Agreement, the Debtors have not sought exit financing from any source other than Capital One.

The Debtors have no reason to believe, however, that they would be able to secure terms on exit

financing superior to those it has negotiated in good faith with Capital One.

19.     To facilitate their negotiating and ultimately entering into an exit credit facility in

a timely manner, subject to approval by this Court, the Debtors and Capital One have entered

into (a) a term sheet letter agreement, dated November 13, 2013 (the "**Exit Facility Term**

**Sheet**"), a copy of which is attached hereto as **Exhibit A**.  Under the Exit Facility Term Sheet,

Capital One has agreed to provide a revolving credit facility of up to $5,000,000, subject to the

terms and conditions set forth in the Exit Facility Term Sheet.

20.     Under the Exit Facility Term Sheet, subject to approval by this Court, the Debtors

have agreed to the following expense reimbursement and indemnification provisions: [4]

- Expenses: The Debtors have agreed to reimburse Capital One for all costs associated with establishing the Exit Credit Facility including, but not limited to, Capital One's out-of-pocket expenses associated with the transaction, professional fees, due diligence fees, recording fees, search fees and filing fees.

- Indemnification: The Debtors will agree to indemnify Capital One, its managers, officers, and principals and hold each of them harmless against any and all losses, liabilities and claims arising out of or by reason of any investigation, litigation, or other proceeding brought or threatened relating to any loan made or proposed to be made, including without limitation the claims of any brokers or anyone claiming a right to any fees in connection with the Exit Credit Facility.

21.     The Exit Facility Term Sheet requires the Debtors to (a) seek and obtain

Bankruptcy Court approval of the Exit Facility Term Sheet and the fees and expenses to be

incurred pursuant thereto (the "**Exit Facility Term Sheet Expenses**") on or before December 5,

2013; and (b) seek Bankruptcy Court approval for any such Exit Facility Term Sheet Expenses

---

[4] This description of the terms of the Exit Facility Term Sheet is a summary and provided for convenience.  To the extent of any discrepancy between this description and the terms of the Exit Facility Term Sheet, the latter shall govern.

incurred by Capital One in the event the transactions contemplated by the Exit Facility Term

Sheet fail to close for any reason other than Capital One's unjustified refusal to do so.

### RELIEF REQUESTED

22.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to

Bankruptcy Code §§ 105(a), 363(b)(1), and 503(b)(1) and Bankruptcy Rules 2002(a)(2) and (c),

and 6004(h), for entry of an order authorizing the Debtors to (a) enter into the Exit Facility Term

Sheet in connection with the anticipated Exit Credit Facility and (b) incur and pay the Exit Fee

Term Sheet Expenses as administrative expenses (subject to the terms and conditions of the Exit

Facility Term Sheet).

### BASIS FOR RELIEF REQUESTED

**A.       The Applicable Standard**

23.     Bankruptcy Code § 363(b)(1) provides, in pertinent part, that "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  Although Bankruptcy Code § 363 does not specify a standard for

determining when it is appropriate for a court to authorize the use, sale, or lease of property of

the estate, courts have required that such use, sale, or lease be based upon the sound business

judgment of the debtor.  See In re Martin, 91 F.3d 389, 394-395 (3d Cir. 1996) (providing that

court may defer to debtor so long as there is "legitimate business justification" to approve the

use, sale, or lease of property outside the ordinary course of business) (citing In re Schipper, 933

F.2d 513, 515 (7th Cir. 1991)); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 145-47

(3d Cir. 1986) (adopting good faith test and implicitly adopting the "articulated business

justification" test set forth in In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983)).

8

24.    To determine whether the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." In re Exide Techs., Inc., 340 B.R. 222, 239 (Bankr. D. Del. 2006).

25.    Once a debtor articulates a valid business justification, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  The business judgment rule shields a debtor's management from judicial second-guessing, and mandates that a court approve a debtor's business decision unless that decision is a product of bad faith or gross abuse of discretion.  See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).  Accordingly, upon finding that a debtor's action satisfies the business judgment rule, such action should be approved under Bankruptcy Code § 363(b)(1).

26.    In addition, Bankruptcy Code § 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-5 (15th ed. rev. 1997) (footnote omitted), see also In re DeLorean Motor Co., 991 F.2d 1236, 1242 (6th Cir. 1993) ("The basic purpose of [Bankruptcy Code § 105(a)] is to enable the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case.") (citation omitted); In re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 843 (E.D.N.Y. & S.D.N.Y. 1991) ("[Section 105] has been construed to afford bankruptcy courts necessary flexibility to facilitate

reorganizations."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D.

Tenn. 1986); Mgmt. Tech. Corp. v. Pardo, 56 B.R. 337, 339 (Bankr. D.N.J. 1985).

    **B.**    **The Debtors Have Made a Sound Business Judgment in Seeking to Execute the Exit Facility Term Sheet and to Pay the Exit Facility Term Sheet Expenses**

    27.    As part of their exit from Chapter 11, the Debtors will require the Exit Credit

Facility, entry into which is a condition to effectiveness of the Plan, to ensure that they have

sufficient available liquidity to fund their obligations under the Plan and to operate their business

in the ordinary course upon their emergence from Chapter 11.  Accordingly, over the past several

weeks, the Debtors and their advisors have spent a significant amount of time negotiating with

Capital One to obtain the best possible terms for their exit financing to help fund the Plan.  Based

on the Debtors' and their advisors' understanding of the availability of financing under these

conditions, the Debtors believe that the Exit Credit Facility will provide the Reorganized Debtors

with the best financing terms and greatest operational flexibility upon their emergence from

Chapter 11.

    28.    As noted above, the Exit Facility Term Sheet requires the Debtors to obtain

approval of the Debtors' obligations to reimburse Capital One for the Exit Facility Term Sheet

Expenses prior to December 5, 2013.  Thus, the Debtors believe that a timely approval of their

entry into the Exit Facility Term Sheet, and their agreement to satisfy the Exit Facility Term

Sheet Expenses in accordance therewith, is necessary for the Debtors to confirm the Plan and to

emerge from Chapter 11 in the near-term.

    29.    The Debtors further believe that the terms of the Exit Facility Term Sheet and the

Exit Facility Term Sheet Expenses are customary in connection with obtaining exit financing and

that incurring such obligations and entering into such an agreement are warranted and

appropriate in light of the value anticipated to be received by the Debtors in obtaining exit

financing.  The payment of certain fees and expenses at this time, and the agreement to provide

indemnities, are integral terms of the Exit Credit Facility and are necessary for the Debtors and

Capital One to move forward with the financing process.  Moreover, the terms of the Exit

Facility Term Sheet are the product of extended, good-faith, and arm's-length negotiations

between the Debtors and Capital One, and they are reasonable given the type of transactions

contemplated by the Exit Facility Term Sheet, the size of the proposed financing, and the

magnitude of these cases.

30.     In addition, the Debtors are concerned that if they were to delay the process of

entering into the Exit Credit Facility, such delay could cause the Debtors, and potentially

ultimately the Reorganized Debtors, to incur additional costs or lead to a prolonged, indefinite

stay in Chapter 11.  Without this financing, the Debtors may remain in Chapter 11 with no clear

path toward emergence, which could damage the Debtors' relationships with their patients,

suppliers, and vendors and otherwise harm their business operations, and it would also result in

undue costs and delays in connection with the continuing administration of these cases, as the

Plan would likely have to be withdrawn.

**C.     The Obligations under the Exit Facility Term Sheet are Administrative
Expenses**

31.     Bankruptcy Code § 503(b)(1)(A) provides that upon notice and a hearing, the

actual necessary costs and expenses of preserving the estate constitute administrative expenses.

Specifically, Bankruptcy Code § 503(b)(1)(A) provides that "[a]fter notice and a hearing, there

shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this

title, including [ ] the actual necessary costs and expenses of preserving the estate . . . ."  Id.  The

Exit Facility Term Sheet Expenses constitute "necessary costs and expenses of preserving the

estate" under Bankruptcy Code § 503(b)(1)(A).  Without the payment of the relevant fees and

11

expenses or the agreement to provide the indemnification obligations upon the terms and

conditions provided for in the Exit Facility Term Sheet, the Debtors would be unable to secure

exit financing.  Obtaining exit financing is a condition precedent to the Debtors' consummating

their Plan, and thus the efforts of Capital One as a potential exit financing lender in connection

therewith serves to preserve the value of the Debtors' businesses for the benefit of their estates

and creditors.  The Exit Facility Term Sheet Expenses, therefore, should be awarded

administrative expense status under Bankruptcy Code § 503(b)(1)(A).

32.    Accordingly, the Debtors submit that entering into the Exit Facility Term Sheet,

agreeing to pay the obligations thereunder, and taking other related actions is (i) necessary for

the Debtors to both confirm and fund the Plan and emerge from Chapter 11 with sufficient

liquidity to continue their business operations, and (ii) a sound exercise of the Debtors' business

judgment and in the best interests of the Debtors, their estates, and creditors.

## WAIVER OF BANKRUPTCY RULE 6004(h)

33.    The Debtors seek a waiver of any stay of the effectiveness of the order approving

this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease

of property other than cash collateral is stayed until the expiration of fourteen (14) days after the

entry of the order, unless the court orders otherwise."  As set forth in the Motion, the relief

proposed herein is essential and necessary for the Debtors to fund the Plan and emerge from

Chapter 11 successfully.  Accordingly, the Debtors submit that ample cause exists to justify a

waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

34.    Notice of this Motion has been served upon the United States Trustee, counsel to

the Debtors' prepetition lenders, counsel to the Committee, counsel to Capital One, and all other

parties that have filed notices of appearance and requested service of papers in these cases or are

51689/0001-10041230v1

otherwise entitled to receive notice of this Motion pursuant to Bankruptcy Rule 2002.  The

Debtors submit that no other or further notice need be given in light of the circumstances of these

cases.

## **NO PREVIOUS REQUEST**

35.    No previous request for the relief sought in this Motion has been made to this or

to any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order granting

the relief requested herein and such other and further relief as is just and proper under the

circumstances.

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for 710 Long Ridge Road
Operating Company II, LLC, *et al.*,
Debtors-in-Possession

DATED:  November 14, 2013          By:  _____*/s/ Michael D. Sirota*_____
                                                              Michael D. Sirota
                                                              Gerald H. Gline
                                                              David M. Bass
                                                              Ryan T. Jareck