# EXHIBIT A



Capital One, N.A.  312−279−2929
111 South Wacker, Suite 5050  capitalonebank.com
Chicago, IL  60606

November 11, 2013

*VIA ELECTRONIC MAIL*

Matt Marcos
Vice President
710 Long Ridge Road Operating Company II, LLC
107 Osborne Street Operating Company II, LLC
1 Burr Road Operating Company II, LLC
240 Church Street Operating Company II, LLC
245 Orange Avenue Operating Company II, LLC
173 Bridge Plaza North
Fort Lee, NJ  07024

We are pleased to advise you that Capital One, N.A. or any of its affiliates, ("**Capital One**" or "**Lender**"), will consider establishing a credit facility (the "**Credit Facility**") with the Credit Parties (as defined below), in the aggregate amount of $5,000,000 (the "**Credit Facility Amount**").  The terms and conditions pursuant to which Lender proposes to provide the Credit Facility are set forth below.  This summary of terms and conditions (this "**Term Sheet**") is for indicative purposes only and does not purport to summarize all terms of the definitive documentation with respect to the Credit Facility.  For purposes of this term sheet, "**Closing Date**" shall mean the date of the initial funding of the Credit Facility.

This Term Sheet does not constitute an offer, obligation, understanding or commitment by Lender to provide financing or advance any funds to Borrower.  This Term Sheet is based upon the fact that the Credit Parties have previously filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") in Case No. 13-13653 (the "**Bankruptcy Case**"), and filed a joint chapter 11 plan of reorganization ("**Chapter 11 Plan**") with the Bankruptcy Court on October 22, 2013, and that any exit financing will only be made pursuant to the terms, covenants and conditions of definitive documentation executed by the Credit Parties and Lender, and approved by the Bankruptcy Court in connection with the Chapter 11 Plan.

1. **TRANSACTION OVERVIEW**

   **Borrower:**  (1) 240 Church Street Operating Company II, LLC d/b/a Newington Health Care Center ("**Newington**"); (2) 245 Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center ("**West River**" and together with Newington, the "**HUD Borrowers**"); (3) 710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge of Stamford ("**Long Ridge**"); (4) 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center ("**Westport**"); and (5) 107 Osborne Street Operating Company II, LLC d/b/a Danbury Health Care Center ("**Danbury**" and together with Long Ridge and Westport, the "**Non-HUD Borrowers**"). The HUD Borrowers and Non-HUD Borrowers are referred to collectively as the "**Borrower**" or the "**Credit Parties**".

   **Guarantor:**  Long Ridge and Westport (the "**Guarantors**") shall guaranty the HUD Borrower's obligations to Lender.

51689/0001-10039215v3

**Transaction/Use of Proceeds:**  Proceeds from the Credit Facility shall be used to:

1. Refinance Borrower's current senior indebtedness.

2. Finance Borrower's existing obligations in the Bankruptcy Case, pursuant to the Chapter 11 Plan and for future working capital requirements.

**2.    CREDIT FACILITY TERMS**

**Revolving Credit Facility**

**Type and Amount:**  A revolving facility in the maximum principal amount of $5,000,000 (the "**Revolver Commitment**").

Lender acknowledges that a portion of the Borrowers' landlords' real estate indebtedness consists of (i) mortgages on the Newington and West River facilities provided under a program sponsored by the United States Department of Housing and Urban Development ("**HUD**") (the "**HUD Loans**"); and (ii) a mortgage on the Danbury facility pursuant to a secured a loan from M&T Bank ("**M&T**") (the "**M&T Loan**").  As a result of the HUD Loan, the Credit Facility will consist of two separate revolving facilities with an aggregate principal amount of $5,000,000: (1) a revolving credit facility secured by the Collateral (as defined herein) of the HUD Borrower (the "**HUD Revolver**"); and (2) a revolving credit facility secured by the Collateral of the Non-HUD Borrower (the "**Non-HUD Revolver**"). The allocation of the Revolver Commitment between the HUD Revolver and the Non-HUD Revolver will be determined during due diligence and in consultation with the Borrower.

**Availability:**  The amount available to Borrower under the Credit Facility at any one time shall be based upon Availability (as defined below).  All collateral proceeds shall be directly deposited into depository accounts subject to satisfactory account control agreements, as determined by Lender, and shall immediately be transferred to Lender's account for further credit to the Credit Facility.  The outstanding balance of the Credit Facility shall increase immediately with new drawings and shall decrease as collections of cash are received by Lender, subject to a three business day hold.  For purposes of calculating net availability, collections of cash received by Lender under the Credit Facility shall be credited immediately to Borrower's obligations thereunder.

As used herein:

"**Availability**" means an amount equal to 85% of the Net Collectable Value (as defined below) of accounts receivable from third-party payors that are aged less than 150 days from date of service.  It is anticipated that Availability will be reduced by a liquidity reserve in an amount to be determined through Lender's due diligence.

"**Net Collectable Value**" means the amount Borrower bills third-party payors less deductible obligations and contractual allowances, which shall be determined by Lender upon completion of its on-site due diligence and which shall be set forth in the applicable loan documents to be provided to Borrower.

**Maturity:**  The Credit Facility shall be available on a revolving basis during the period commencing after the Closing Date and ending on the date that is three (3) years after the Closing Date (the "**Revolver Maturity Date**").

*CT Exit Financing*

| | |
|---|---|
| **Principal Repayment:** | All obligations under the Credit Facility shall be due and payable in full by Borrower to Lender upon the earlier of: (i) the Revolver Maturity Date; (ii) acceleration after the occurrence of an event of default under the loan documents; and (iii) termination. |
| **Interest Rate:** | Each borrowing under the Credit Facility shall bear interest at a floating rate per annum equal to the Eurodollar Rate (as defined below), plus the Applicable Revolver Margin (as defined below). |
| | As used herein: |
| | "**Applicable Revolver Margin**" means 2.75%. |
| **Unused Commitment Fees:** | Borrower shall pay Lender an Unused Commitment Fee calculated at a rate per annum equal to 0.50% on: (a) the Revolver Commitment; less (b) the average daily outstanding loan balance of the Revolving Credit Facility. |
| **Upfront Fees:** | At the Closing Date (or earlier upon the execution of a commitment letter as applicable), Borrower shall pay Lender an Upfront Fee of 0.75% of the Revolver. |
| **Payment Date and Basis:** | Interest and fees due under the Credit Facility shall be due and payable monthly in arrears. All rates shall be calculated on the basis of a year of 360 days for actual days elapsed. |

**3.    COLLATERAL**

| | |
|---|---|
| **Collateral and Security:** | The Credit Facility shall be secured by a first priority perfected lien on and security interest in (subject to the HUD Inter-Creditors and M&T Inter-Creditor (each as defined herein)): (i) all existing and future accounts receivable including, without limitation, the inventory, equipment, intellectual property, contracts and other general intangibles related to the accounts receivable, as well as, the cash and proceeds of each of the foregoing and all proceeds thereof of Borrower and its direct and indirect subsidiaries; (ii) all of the capital stock of Borrower and of Borrower's direct and indirect subsidiaries (limited in the case of non-U.S. subsidiaries to 100% of the non-voting interests therein and 65% of the voting interests therein); and (iii) all other tangible and intangible assets of Borrower and its direct and indirect subsidiaries, whether existing at the Closing Date or thereafter organized or acquired including inventory, accounts, license rights, chattel paper, titles, notes, cash, security accounts, other investment property, insurance proceeds, royalties, contract rights, lease agreements, tax refunds, documents, notes, trade-names, trademarks, patents, customer lists, general intangibles, all inventory wherever located, and all unencumbered equipment and real property (collectively, the "**Collateral**").  The HUD Revolver will also be secured by a second priority perfected lien and security interest in the Collateral of the Guarantors. |
| **HUD Collateral Provisions:** | Lender agrees to cooperate with the Borrower in conjunction with the HUD Loans, including without limitation, entering into reasonable inter-creditor agreements with HUD with respect to the Collateral securing the HUD Revolver (the "**HUD Inter-Creditors**"). Lender further acknowledges that the Collateral securing the HUD Revolver will be subject to a junior lien filed by HUD in all Collateral, other than Collateral attributable to Danbury, to secure the HUD Loans, which junior lien shall be *parri passu* with a junior lien filed by M&T on the Collateral attributable to Long Ridge and Westport. |

| | |
|---|---|
| **Non-HUD Collateral Provisions:** | Lender agrees to cooperate with the Borrower in conjunction with the M&T Loans, including without limitation, entering into reasonable inter-creditor agreements with M&T with respect to the Collateral securing the Non-HUD Revolver (the "**M&T Inter-Creditors**"). Lender further acknowledges that the Collateral securing the Non-HUD Revolver will be subject to a junior lien filed by M&T in all Collateral, other than Collateral attributable to Newington and West River, to secure the HUD Loans, which junior lien shall be *parri passu* with a junior lien filed by HUD on the Collateral attributable to Long Ridge and Westport. |

### 4. DOCUMENTATION AND CERTAIN CONDITIONS

| | |
|---|---|
| **Credit Documentation and General Terms:** | The definitive credit documentation to be provided to the Credit Parties relating to the Credit Facility shall be consistent with this Term Sheet and shall contain certain representations, warranties, covenants and other terms and conditions consistent with those customarily found in similar financings, including a provision in the Non-HUD Revolver that cross-defaults it with the HUD Revolver. The Credit Parties shall execute and deliver to Lender such loan and security agreements, notes, subordination agreements, inter-creditor agreements, instruments, documents, certificates, opinions, fraud guaranties, third party reports and assurances as are reasonable and customary for similar loans, and as Lender may require in connection with the closing of the Credit Facility in its sole discretion. The Credit Facility shall not be permitted to be prepaid prior to the 12th month anniversary of the Closing Date. If the Credit Facility is prepaid subsequent to the 12th month anniversary of the Closing Date and prior to the 24th or 36th month anniversary of the Closing Date, Borrower shall pay Lender a fee of 1.0**%** or 0.5**%** of the Revolver Commitment, respectively. If at any time subsequent to the Closing Date, but prior to the repayment of all obligations under the Credit Facility, Borrower applies for or otherwise seeks financing from any person, including from HUD or M&T, Borrower agrees that Lender or its designee shall have the first right of refusal to provide and arrange such financing of Borrower. |
| **Financial Covenants:** | The Credit Facility will contain a minimum liquidity covenant (unrestricted cash-on-hand plus excess Availability under the Credit Facility) to be complied with at all times during the term of the Credit Facility. Additional financial covenants and covenant levels shall be determined subsequent to completion of Lender's due diligence. |
| **Closing Conditions:** | Prior to the Closing Date:<br>1. There shall be no material change in Borrower's business or general financial condition.<br>2. There shall be no material default in any of Borrower's obligations under any contract.<br>3. Borrower shall be in compliance with all applicable laws.<br>4. Lender shall receive an opinion from Borrower's counsel satisfactory to Lender and to Lender's counsel.<br>5. Borrower shall maintain and pay for a lockbox/blocked account, or accounts if necessary, mutually satisfactory to Borrower and Lender for Borrower's cash collections.<br>6. Lender shall complete a review of the corporate and capital structure of the Borrower which shall be satisfactory to Lender and Lender's counsel. The Borrower shall prepare a schedule of all subsidiaries and affiliates of the |

Borrower.

7. Lender and its advisors shall perform due diligence to determine the liquidity of Borrower's accounts receivable and the general financial and operational state of the Borrower. Lender's due diligence shall include a review of the Borrower's collateral files, assets, liabilities, books and records, MIS and cash management systems, relevant financial information, and other materials relevant to the closing of the Credit Facility as determined by Lender. In addition, Lender shall have the right to conduct periodic due diligence to assess the on-going collateral value of Borrower's accounts receivable subsequent to the closing of the Credit Facility.

8. Lender shall complete background surveys on key officers of the Borrower and verify the Borrower's identity consistent with the provisions of the USA Patriot Act.

9. Borrower, Lender and HUD shall enter into the HUD Inter-Creditors on reasonable and customary terms and conditions.

10. Borrower, Lender, and M&T shall enter in the M&T Inter-Creditor on reasonable and customary terms and conditions.

11. Borrower, Lender and Borrower's manager shall enter into a management fee subordination agreement, satisfactory in form and substance to Lender, subordinating management fees.

12. The Borrowers, Lender and the Borrowers' landlords shall enter into rent subordination agreements, satisfactory in form and substance to Lender, subordinating the portion of rent payments in excess of debt service amounts under the landlords' mortgage indebtedness, if any

13. Entry of a final order by the Bankruptcy Court confirming the Chapter 11 Plan of Borrower that is acceptable to Capital One, and no action, litigation or proceeding pending or otherwise commenced against Capital One or its affiliates in the Bankruptcy Case or any affiliated/related case.

**Expenses and Indemnification:** All costs associated with establishing the Credit Facility including, but not limited to, Lender's out-of-pocket expenses associated with the transaction, professional fees, due diligence fees, recording fees, search fees and filing fees shall be paid by Borrower. The foregoing shall include the Credit Parties' obligation to: (a) seek and obtain Bankruptcy Court approval of this Term Sheet and the fees and expenses to be incurred pursuant to this Term Sheet on or before December 5, 2013; and (b) seek Bankruptcy Court approval for any such expenses incurred by Lender in the event the transactions contemplated herein fail to close for any reason other than Lender's unjustified refusal to do so. Borrower represents and warrants to Lender that it has not contracted with, or does it know of, any broker who has participated in the Credit Facility or the transactions contemplated herein.

The Credit Parties will agree to indemnify Lender, its managers, officers, and principals and hold each of them harmless against any and all losses, liabilities and claims arising out of or by reason of any investigation, litigation, or other proceeding brought or threatened relating to any loan made or proposed to be made, including without limitation the claims of any brokers or anyone claiming a right to any fees in connection with the Credit Facility.

| | |
|---|---|
| **Confidentiality:** | Prior to the execution hereof, Credit Parties will not disclose the contents of this letter (or that the Credit Parties and Lender are having any discussions related to a possible loan including the status thereof, termination thereof, any decision on the Credit Parties' or Lender's part to no longer consider any such loan or any terms, conditions, or other facts with respect thereof) to any third party, including, without limitation, any financial institution or intermediary, with the exception of the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case, M&T and HUD, without Lender's prior written consent, other than to the Credit Parties' officers and advisors on a need-to-know basis. The Credit Parties agree to inform all such persons who receive information concerning this letter that such information is confidential and may not be disclosed to any other person. Upon the execution hereof, the Credit Parties may disclose this letter and/or the contents hereof with its Disclosure Statement filed and served in connection with the Chapter 11 Plan. |
| **Choice of Law/No Jury Trial:** | Any dispute arising under or in connection with this Term Sheet and the Credit Facility shall be governed by the laws of the State of New York without reference to its internal choice of law provisions. The undersigned hereby consents to jurisdiction and venue of the state and federal courts located in the State of New Jersey for the resolution of all disputes arising under or in connection with this Term Sheet. Borrower and Lender each agrees not to elect a jury trial of any issue triable by right of jury and waives any right to jury trial fully the extent that any such right shall now or hereafter exist with regard to any of the matters in connections with the transaction, or any claim, counterclaim or other action arising in connection therewith. This waiver of right to jury trial is given knowingly and voluntarily by Borrower and Lender, and is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. Each of Lender and Borrower is authorized to file a copy of this paragraph in any proceeding as conclusive evidence of the waiver by Borrower and Lender. |
| **Expiration:** | The closing of the Credit Facility will occur on a date that is mutually satisfactory to Borrower and Lender; however, if either of the following occur: (i) the Credit Facility does not close on or before February 28, 2014; or (ii) Lender does not receive this accepted term sheet on or before November 15, 2013, this proposal shall expire and (except for such provisions which survive) have no further force or effect, unless extended by Lender. |
| **Notice:** | Lender hereby notifies Borrower that to help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: Lender is required to obtain, verify and record certain information and documentation that identifies each Borrower, which information includes the name and address of each Borrower and such other information that will allow Lender to identify each Borrower in accordance with Federal law. |

This letter contains an outline of suggested terms only, and it does not represent a commitment by Capital One or create any obligation whatsoever on Capital One's part. It is for discussion purposes only, and the outlined terms have not received final approval by the appropriate Capital One lending authorities. This letter constitutes the entire understanding between the Borrower and Lender in connection with this proposed transaction, superseding all prior written or oral communications or understandings, and may be amended or supplemented only in a writing signed by Lender and Borrower.

Please note that by acceptance of the terms and conditions of this letter of proposal, Borrower acknowledges that this Term Sheet is issued at a time when Capital One has not yet undertaken a full business, credit, and legal analysis of the Credit Parties and the proposed financial arrangement contemplated hereby. Only after the above analysis is complete can final credit approval be given.

If the terms and conditions set forth above are satisfactory, please sign the enclosed copy of this letter and return it to my attention. Please call me at 312-279-2929 should you have any questions or comments.

Very Truly Yours,


Steve Anderson
Senior Vice President


**The foregoing is accepted and agreed to:**

**710 Long Ridge Road Operating Company II, LLC**
**107 Osborne Street Operating Company II, LLC**
**1 Burr Road Operating Company II, LLC**
**240 Church Street Operating Company II, LLC**
**245 Orange Avenue Operating Company II, LLC**

By: _____

Name: _Matt Marcos_

Title: _Vice President_

Date: _11/13/13_