# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

LEVY RATNER, P.C.
Susan J. Cameron (033942006)
Suzanne Hepner (admitted *pro hac vice*)
80 Eighth Avenue, 8th Floor
New York, New York 10011-5126
Phone: (212) 627-8100
Facsimile: (212) 627-8182

JAMES & HOFFMAN, P.C.
Kathy L. Krieger (admitted *pro hac vice*)
Darin M. Dalmat (admitted *pro hac vice*)
1130 Connecticut Ave., NW, Suite 950
Washington, DC 20036-3975
Phone: (202) 496-0500
Facsimile: (202) 496-0555

*Attorneys for Appellant,*
*New England Health Care Employees Union, District 1199, SEIU*

| | |
|---|---|
| In re:<br>**710 Long Ridge Road Operating Co. II, LLC, et al.**<br>　　　　　　　　　　　　　　Debtors.<br>U.S.B.C. D.N.J. Chapter 11<br>Case No. 13-13653 (DHS)<br>(Jointly Administered) | D.N.J. Docket No: |

## MEMORANDUM IN SUPPORT OF SEIU'S MOTION
## FOR LEAVE TO APPEAL ORDERS
## GRANTING RELIEF PURSUANT TO 11 U.S.C. § 1113(e)

The New England Health Care Employees Union, District 1199 ("Union" or "SEIU")

respectfully submits this memorandum of law in support of its motion under Rules 8001 and

8003 of the Federal Rules of Bankruptcy Procedure for leave to appeal the bankruptcy court's

November 21, 2013, Bench Ruling ("**4th 1113(e) Op.**"), See Draft Hr'g Tr. (November 21,

2013), attached hereto as Exhibit 1,, November 22, 2013, Oral Opinion on the Record,

undocketed, and Order, Dkt. 706 (collectively "**4th 1113(e) Decision**"), granting relief under 11

U.S.C. § 1113(e) for the fourth time in this bankruptcy proceeding. In particular, the 4th 1113(e)

Decision granted the Debtors' Motion (Dkt. 563 and 690) for authorization to continue through January 10, 2014, certain Revised Interim Modifications to obligations under expired collective bargaining agreements with the Union, following a series of earlier § 1113(e) rulings by the Court issued on March 4, 2013 (Dkt. 65 and 66), April 9, 2013 (Dkt. 228), April 10, 2013 (Dkt. 230) and July 15, 2013 (Dkt. 423 and 424). As noted below, the Union and the National Labor Relations Board filed timely Notices of Appeal and Motions for Leave to Appeal with respect to those prior interrelated § 1113(e) rulings; the District Court granted leave to appeal; and briefing on those appeals has been deferred pending disposition of the appellants' request for certification of direct appeal to the Third Circuit.

Because the Bankruptcy Court's 4th 1113(e) Decision extends previously appealed § 1113(e) relief and raises the same underlying legal issues, the Union submits that leave to appeal the 3rd 1113(e) Decision should likewise be granted so that this appeal and the prior appeals can be consolidated for consideration and disposition together. As in the case of the prior § 1113(e) rulings appealed to this Court, the Union considers the 4th 1113(e) Decision a final order that is appealable as of right. As a precaution, however, the Union again demonstrates that in the event that the 4th 1113(e) Decision is deemed interlocutory, the Union's motion for leave to appeal should be granted to enable resolution of the controlling, substantially disputed issues of law presented on this appeal together with the prior pending appeals, thus materially advancing both the parties' litigation over employment terms at the Debtors' facilities and the Chapter 11 case as a whole.

## PRELIMINARY STATEMENT

The 4th 1113(e) Decision repeats and exacerbates the bankruptcy court's previous errors of law in authorizing unprecedented and impermissible relief under Section 1113(e) of the Code. Specifically, the bankruptcy judge has allowed the Debtors—five Connecticut nursing home facilities managed by HealthBridge Management, LLC ("**HealthBridge**")—to continue to implement wages, benefits, and other terms and conditions of employment that differ from those

- 2 -

mandated by a December 2012 injunction issued by the U.S. District Court for the District of Connecticut under Section 10(j) of the National Labor Relations Act ("**NLRA**" or "**Act**"), in conjunction with an ongoing federal law enforcement proceeding under the exclusive jurisdiction of the National Labor Relations Board ("**NLRB**" or "**Board**"). By its terms, the Connecticut district court's Section 10(j) injunction orders the facilities to implement and maintain specific employment terms until the NLRB completes pending proceedings to adjudicate and remedy allegations of unfair labor practices by the facilities.

During the litigation of the 10(j) injunction, the facilities argued that the employment terms the Board sought to impose as a remedy for alleged labor law violations were financially devastating and would lead to the imminent closure of those facilities. The Connecticut district court rejected those contentions. The facilities then sought to stay the 10(j) injunction, but the Second Circuit and Supreme Court rejected their contentions three more times.

Dissatisfied with the decisions of twelve Article III judges, the facilities filed a bankruptcy petition and immediately moved for interim relief from the employment terms mandated by the district court injunction. The Union and the NLRB objected that two insuperable jurisdictional obstacles prevented the bankruptcy court from awarding the interim relief Debtors sought.

First, the Debtors' request for Section 1113(e) relief was, in effect, an impermissible attempt to review and collaterally attack the substance of the Connecticut district court's 10(j) injunction. Because jurisdiction to review that injunction decision (and to grant concurrent stay pending appeal) is confined solely to the federal appellate courts, the bankruptcy court lacked authority to modify or negate the Connecticut district court's order. Second, Section 1113(e) authorizes interim relief only from the terms of a collective bargaining agreement, but in this case there is no collective bargaining agreement to be modified. Rather, the Debtors sought relief from employment terms imposed by judicial order and by statute. The Union and the NLRB also objected that even if the bankruptcy court had authority to act on the Debtors' request, the prior

10(j) litigation already decided the matter and precludes relitigation of the same financial crisis

and irreparable harm issues the Debtors had argued unsuccessfully in those proceedings.

The bankruptcy court overruled the Union's and the NLRB's objections and granted the

Debtors the interim relief they sought. *See* March 4, April 9, July 15, 2013, 1113(e) rulings, cited

*supra* at 1-2. The Union and NLRB raised those same objections to the Debtors' fourth motion

for relief under Section 1113(e). *See* Union's Objections, Dkt. 673 at 2; NLRB's Objections,

Dkt. 667 at 1. But the bankruptcy court again overruled those objections. Dkt. 706.

This Court previously found good cause to grant leave to appeal from the prior Section

1113(e) decisions. *See in re 710 Long Ridge Road Operating Company II, LLC*, 13-cv-2977

(D.N.J. May 21, 2013) (Dkt. 15). As demonstrated below, equally good cause exists to grant

leave to appeal from the bankruptcy court's 4th 1113(e) Decision, because that Decision is either

final and appealable under 28 U.S.C. § 158(a)(1), or should be reviewed immediately under 28

U.S.C. § 158(a)(3), in the unusual circumstances of this case.

Because all relevant collective bargaining agreements have long expired, and no

permanent relief is available under the Bankruptcy Code from the terms previously established

by those agreements, the 4th 1113(e) Decision—which found authority to issue relief on the

basis of the prior Section 1113(e) decisions—finally determined the discrete issue of Chapter 11

relief from the employment terms mandated by the Connecticut district court's order. Exhibit 1,

21:15-21. Moreover, the 4th 1113(e) Decision also, by reference, addressed several questions of

law that control the Debtors' right to relief from those 10(j) injunction terms, and there are

substantial grounds for disagreement over the bankruptcy judge's unprecedented ruling in light

of binding Supreme Court authority and applicable statutory language. *Id.* Early resolution of

these jurisdictional and threshold legal questions would substantially advance this Chapter 11

case, which the Debtors admit is aimed primarily, if not exclusively, at securing relief from

employment terms. Prompt resolution of dispositive legal issues would also promote judicial

economy. As a result, this Court can and should entertain the Union's appeal either by right or by

leave.

## STATEMENT OF FACTS[1]

I.     **The collective bargaining agreements between the Union and the HealthBridge facilities expired in March 2011 and have not been honored at the Debtors' facilities since 2010.**

Since 2003, HealthBridge has managed the five Connecticut nursing home facilities that filed as Debtors in this case: Danbury Health Center, Long Ridge of Stamford, Newington Health Care Center, Westport Health Care Center, and West River Health Care Center. March 4, 2013, Opinion ("1st 1113(e) Op."), Dkt. 65 at 3; *Kreisberg v. HealthBridge Management, LLC*, Case No. 3:12-CV-1299 (RNC) (D. Conn. Dec. 14, 2012), Dkt. 15-2 ("**10(j) Op.**") at 2. The Union represents approximately 700 employees at these facilities. 1st 1113(e) Op. at 4. It had collective bargaining agreements ("**CBA**") with each facility, which were effective from December 31, 2004, through March 16, 2011. *Id.* By their own terms, each CBA is now expired. *Id.*

In 2010, before those agreements expired, the HealthBridge facilities unilaterally changed various terms and conditions of employment without first bargaining with the Union. 10(j) Op. at 3. The Union filed charges with the NLRB alleging that those unilateral changes were unfair labor practices that violated the NLRA, and an NLRB Administrative Law Judge sustained those charges. *Id.* at 3 & 3 n.2 (citing *Healthbridge Mgmt., LLC, et al.*, No. 34-CA-12716, 2012 WL 3144346 (NLRB Div. of Judges Aug. 1, 2012)).[2]

II.    **The facilities continued to flout labor law, causing a strike, even after the expiration of their labor agreements.**

Despite the facilities' contested unilateral changes, the parties began negotiations for

---

[1]     The pertinent facts are set forth in more detail in the Union's memorandum in support of its motion for leave to appeal from the first and second 1113(e) decisions, *see In re 710 Long Ridge Road Operating Co. II, LLC*, 13-cv-02977 (Dkt. 2), which the Union incorporates here by reference.

[2]     In particular, the ALJ found HealthBridge to be a joint employer with each of the five facilities. *Healthbridge Mgmt., LLC, et al.*, 2012 WL 3144346, *2.

successor CBAs in January 2011. 10(j) Op. at 4. Those negotiations continued through June 2012 but did not culminate in any new agreements. 1st 1113(e) Op. at 4. Meanwhile, the NLRB issued a complaint in February 2012 charging HealthBridge and the Debtor facilities with additional violations of the NLRA for bad faith bargaining and an unlawful employee lockout. 10(j) Op. at 6–7. While that NLRB complaint was pending, HealthBridge and the facilities declared the negotiations at an impasse and announced that they would unilaterally implement the terms of their April 2012 "Last, Best, and Final" ("LBF") proposals. 1st 1113(e) Op. at 4; 10(j) Op. at 7, 11.

The Union responded by giving a 10-day notice of a strike in protest of the facilities' violations of the NLRA, while concurrently offering to cancel the strike and continue working under the pre-LBF terms and conditions of employment in effect on June 16, 2012. 1st 1113(e) Op. at 4; 10(j) Op. at 11. The facilities rejected that offer and, instead, permanently replaced the strikers. From June 16, 2012 through the issuance of the 1st 1113(e) Decision, the facilities employed replacement workers under the unilaterally implemented LBF terms. 1st 1113(e) Op. at 4.

## III.     The NLRB petitioned for and obtained injunctive relief to preserve its power to remedy the HealthBridge facilities' unfair labor practices.

The NLRB, through its Regional Director Jonathan Kreisberg, then petitioned the federal district court for the District of Connecticut for injunctive relief under Section 10(j) of the NLRA, 29 U.S.C. § 160(j). After reviewing an "extensive record" of "affidavits, correspondence, contract proposals, and bargaining notes of the parties," the Connecticut district court issued the injunction requested by the NLRB. 10(j) Op. at 13–14. By its terms, the district court's injunction is effective until "the final disposition of charges of unfair labor practices now pending before the Board." Ruling and Order Containing the Injunction Under Section 10(j) of the National Labor Relations Act ("**10(j) Order**"), Dkt. 15-3.

Among other things, the 10(j) Order requires the facilities to (1) reinstate the strikers to their prior positions; (2) restore the the wages, benefits and working conditions that had been in

place on June 16, 2012; and (3) bargain in good faith with the Union. 10(j) Order at 4. As the

district court recognized, the "extraordinary remedy" of a 10(j) injunction reflects the "clear

purpose" of Congress to "preserve" the NLRB's law enforcement powers by authorizing federal

courts to enjoin alleged NLRA violations "before an injury becomes permanent" and by ensuring

that the lengthy duration of underlying administrative proceedings will not "render a final Board

order ineffectual."  10(j) Op. at 15, 16 n.10 (citing authorities).

**IV.    The facilities objected to the injunction on the basis that it would irreparably harm
them financially and require their imminent closure, but the district court, the
Second Circuit, and the Supreme Court all overruled that objection.**

In the district court proceedings, the facilities argued that the injunction should be denied

because "restoration of the June 16, 2012 terms and conditions of employment would

significantly harm [their] financial stability," and that harm "outweigh[ed] any potential harm to

the Union," making injunctive relief unjust and improper. 10(j) Op. at 30, 32. The district court

rejected that argument because the facilities operated stably for several years under the terms

imposed by the injunction and the facilities failed to establish evidence of "potential financial

calamity," despite ample opportunity to present such evidence. 10(j) Op. at 32. In fact, the

district court observed that the facilities' own evidence contradicted their new claim of financial

harm: at the bargaining table, their own attorney denied asserting "an inability to pay" the pre-

LBF terms. 10(j) Op. at 32 n.12. The same attorney presented the district court written testimony

that the facilities had "never claimed inability to pay as a basis for any of their proposals, as the

[Debtors] did not want to run the risk of being put into forced receivership by the State of

Connecticut." Declaration of Jonathan Kaplan, Dkt. 15-4, ¶ 21.

Once the injunction issued, the facilities filed an "emergency motion for partial stay

pending appeal," in which they argued that the terms of the injunction would cause them to

suffer "unsustainable financial consequences" and "inevitably" force them "to close altogether."

Dkt. 54-3 at 8. The district court rejected their allegation of "potentially ruinous financial

consequences" as "speculative in nature and not supported by the record." Ruling and Order,

Dkt. 51-1 at 5. Ultimately, the court could not "conclude that the financial consequences of reinstating the strikers would be so dire as to justify a stay." *Id.*

The facilities continued to press the financial crisis and irreparable harm issue, filing a motion for a partial stay pending appeal with the United States Court of Appeals for the Second Circuit. Dkt. 54-7, 54-8. They again argued that reinstatement of the strikers under the terms of the injunction would "financially cripple the Centers." Dkt. 54-7 at 29. The Second Circuit temporarily stayed the injunction to give it time to consider the facilities' motion, Dkt. 54-6, but ultimately denied the requested stay after "due consideration" because the facilities had "not demonstrated that they will be irreparably harmed absent a stay." Dkt. 54-9 at 1.

The facilities pressed the issue further still by filing with the United States Supreme Court an "emergency application for partial stay injunction pending appeal in the [Second Circuit], or in the alternative, petition for writ of certiorari and partial stay of injunction pending resolution of the petition." Dkt. 54-10. Yet again, the facilities asserted "ruinous financial consequences to HealthBridge if forced to comply with the District Court's order … ," which they again claimed imposed "unsustainable terms" that would "likely lead to the closure of the Centers … ." Dkt. 54-10 at 32. Justice Ginsburg denied the petition that day. Dkt. 54-11. The facilities renewed their emergency application the following day to Justice Scalia, who referred it to the full Supreme Court, which denied it again on February 6, 2013, rejecting the facilities' financial arguments for a fifth time. Dkt. 54-12, 54-13.[3]

**V.    The Debtor facilities turned to the bankruptcy court to seek relief denied by twelve Article III judges.**

On February 24, 2013, just over two weeks after the Supreme Court denied their application to stay the Connecticut district court injunction, the facilities filed a petition for reorganization under Chapter 11. Dkt. 1. Their first day affidavit explained that "the Debtors' cases have been initiated to implement interim and ultimately permanent modifications to their

---

[3]    Justice Alito took no part in the consideration or decision of the application.

expired collective bargaining agreements … ." Affidavit of Victor Matthew Marcos in Support of Debtors' "First Day Motions," Dkt. 5 at 5, ¶ 5.

Consistent with that affidavit, the day after filing their bankruptcy petition, the Debtors moved for relief under 11 U.S.C. § 1113(e). Dkt. 15-1. In that motion, the Debtors sought authority from the bankruptcy court to employ their "unionized employees"—e.g., the strikers— under terms and conditions of employment that the Debtors admit are "substantially similar to the Implemented Terms … ," i.e., the unlawful LBF terms that had been rescinded by the 10(j) injunction. Id. at 12–13, ¶ 19.

At the hearing on the Union's and NLRB's objections to the motion, the Debtors' Vice President "acknowledged that Debtors' financial condition has not changed since January 2013 and that the Union has not had the benefit of the Debtors' financial statements and other information prior to the Debtors' Chapter 11 filings." 1113(e) Op. at 9. He also admitted that "the Debtors' drastic financial condition was not disclosed in [his] Affidavit submitted in the 10(j) Injunction hearing before the District Court." Id.

## VI.    The bankruptcy court's first and second 1113(e) decisions

The bankruptcy court granted the Debtors relief under Section 1113(e), despite the Union's and the NLRB's objections to its authority to do so. The Union then moved the Court to amend or make additional findings and for reconsideration of its first 1113(e) decision. Dkt. 114, 114-1. Shortly thereafter, the Debtors filed their second motion under Section 1113(e), which sought to continue the interim relief previously granted. Dkt. 197, 197-1. The Union and NLRB again objected to the Debtors' second 1113(e) motion, including on the grounds raised against their first 1113(e) motion. Dkt. 216–17. And, for their part, the Debtors objected to the Union's motion for reconsideration of the first 1113(e) decision. Dkt. 208. The Court denied the Union's motion for reconsideration, Dkt. 228, and granted the Debtors' second 1113(e) motion, overruling the Union's and NLRB's objections to the bankruptcy court's authority to award interim relief based on the reasons set forth in its first 1113(e) decision, Dkt. 230 ("**2nd 1113(e)**

Decision").

**VII.     The appeals from the bankruptcy court's first and second 1113(e) decisions**

Both the Union and the NLRB timely appealed and moved for leave to appeal the

bankruptcy court's first and second 1113(e) decisions. *In re 710 Long Ridge Road Operating Co.*

*II, LLC*, 13-cv-02977, Dkt. 1 & 2. This Court granted both appellants' requests for leave to

appeal. *Id.*, Dkt. 15 & 17. The NLRB then sought certification from this Court to submit the

appeal directly to the United States Court of Appeals for the Third Circuit, and the Union joined

that motion. *In re 710 Long Ridge Road Operating Co. II, LLC*, 13-cv-03247, Dkt. 10 & 11. The

motion for certification of the direct appeal is currently pending.  In light of that motion, the

parties stipulated to defer briefing on the district court appeals from the bankruptcy court's

1113(e) decisions until the district court and Third Circuit decide whether to certify the direct

appeal, and the Court ordered that stipulation. *In re 710 Long Ridge Road Operating Co. II, LLC*,

13-cv-03247, Dkt. 9; 13-cv-03248, Dkt. 8.

**VIII.    The bankruptcy court's 4th 1113(e) decision and the subject of this appeal**

While the appeals from the bankruptcy court's first, second and third 1113(e) decisions

were pending, the bankruptcy court issued its fourth 1113(e) decision, explicitly noting that the

Union's and NLRB's challenges to its authority to issue that decision were pending on appeal.

Exhibit 1, 21:15-21. This appeal followed.

**QUESTIONS PRESENTED FOR APPEAL**

The Union's appeal presents three significant questions of law:

1.     **Impermissible Collateral Review and Attack:** The NLRB exercised its exclusive
authority to remedy unfair labor practices by issuing a complaint and then seeking and obtaining
an injunction under Section 10(j) of the NLRA; that injunction requires HealthBridge and its
facilities to reinstate employees and implement specific terms of employment until the NLRB
finally disposed of the pending unfair labor practice complaint. Did the bankruptcy court act
beyond its jurisdiction—and impermissibly collaterally review and attack the 10(j) injunction—
by purporting to give the Debtor-facilities approval, under Section 1113(e) of the Code, to
modify the very employment terms required by the injunction before the NLRB has resolved the
unfair labor practice complaint?

2.      **Inapplicability of Section 1113 after all relevant CBAs have terminated:** The CBAs expired by their own terms nearly two years before the Debtors' bankruptcy petition and did not, by their terms, renew themselves beyond their expiration. Did the bankruptcy court lack authority to authorize "interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement" where the terms of employment at issue here were provided by judicial order and statutory obligation rather than by agreement?

3.      **Issue Preclusion:** The Connecticut district court found the 10(j) injunction to be just and proper, notwithstanding the facilities' objections that they would suffer irreparable financial harm and would be forced to close if required to operate under the employment terms prescribed by that injunction. That district court, the Second Circuit, and the Supreme Court all denied the facilities' requests to stay the injunction, rejecting the repeated assertions of financial crisis and irreparable harm. Do the decisions of those twelve Article III judges preclude the facilities from relitigating the issue of irreparable financial harm under Section 1113(e), where the facilities admit that nothing material has changed in their finances during the few weeks since those decisions issued?

**ARGUMENT**

I.      **The 1113(e) orders are final and appealable under 28 U.S.C. § 158(a)(1) given the unusual circumstances of this case.**

District courts have jurisdiction under 28 U.S.C. § 158(a)(1) to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges. This Circuit takes a pragmatic, functional view of the finality of bankruptcy orders because Chapter 11 reorganizations involve extended, multiparty proceedings that raise numerous contested legal issues, whose resolution on appeal would waste time and resources if unavailable until after the approval of a reorganization plan. *See, e.g., In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992) (citing *Wheeling-Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 157 (3d Cir. 1987); *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)). *Accord In re Lehman Bros. Holdings, Inc.*, 697 F.3d 74, 77 (2d Cir. 2012). Consistent with that approach, courts in this Circuit assess four factors in determining the finality of any particular order: (1) the impact of the order upon the assets of the bankruptcy estate; (2) the need for further fact-finding on remand, if the appeal is granted; (3) the preclusive effect of the appellate decision on the merits of further litigation in the bankruptcy case; and (4) whether immediate appeal would promote judicial economy. *Market Square Inn*, 978 F.2d at 120 (quoting *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987)).

Notably, the Third Circuit has consistently found bankruptcy orders to be final where they raise jurisdictional questions or legal questions that otherwise determine the availability of bankruptcy relief, as a threshold matter. *E.g., Market Square Inn*, 978 F.2d at 120–21 (order finding a lease agreement to be valid, and subject to assumption under Section 365 of the Code, deemed final, even though no order granting or denying relief under Section 365 had yet issued); *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 37–38 (3d Cir. 1993) (order deeming rents to be outside the bankruptcy estate deemed final); *Meyertech*, 831 F.2d at 414 (order establishing theory of damages deemed final, even though remand pending for a determination of the amount of damages); *McCune*, 836 F.2d at 158 (order staying determination of whether a debtor is a railroad covered by specific Chapter 11 provisions deemed final, even where the stay would be lifted only once a state agency acted).

As demonstrated below, the bankruptcy court's 4th 1113(e) Decision easily qualifies as a final, appealable order under these standards.

First, the order clearly has a material impact on the assets of the bankruptcy estate: the bankruptcy judge expressly and necessarily found that the order was both "essential to the continuation of the Debtors['] business," 10(j) Op. at 21–22, and "essential to avoid irreparable damage to the estate," *id.* at 24. Indeed, the Debtors themselves have identified relief from the operative employment terms to be the primary purpose and focus of their entire Chapter 11 proceeding. *See supra* at 8. So there can be no serious dispute that the 1113(e) Decision materially affected the estates' assets.

Second, the appeal, if granted, would also eliminate the need for further fact-finding and dramatically economize on judicial resources. That is so because the Union's appeal brings three separate threshold challenges to the bankruptcy court's authority to grant any relief under Section 1113(e). *See supra* at 10–11. The first two issues on appeal—impermissible collateral review/attack and inapplicability of Section 1113 in the absence of a collective bargaining agreement—contest the bankruptcy court's jurisdiction to hear the Section 1113(e) motion at all.

- 12 -

If the Union prevails on either of these appeal grounds, there is nothing left for the bankruptcy judge to do on the initial 1113(e) motion or any subsequent motion for interim relief from the employment terms prescribed by the Connecticut district court's injunction, except to declare that the bankruptcy court has no power to act and to dismiss the matter. *See Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506 (1869)). The third point raised on appeal—issue preclusion—contends that the results of prior litigation bound the facilities in the proceedings below and required the denial of their relief request presenting the very issues they previously litigated and lost. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (issue preclusion gives effect to a prior judgment by barring successive litigation of issues previously litigated and essential to that judgment). Like the Union's jurisdictional challenges, this estoppel argument, if accepted, would prevent the bankruptcy court from engaging in further fact finding on the matter.

As for judicial economy, the Debtors themselves have made the obtaining of interim, and ultimately permanent, Section 1113 relief the primary goal and central focus of their Chapter 11 case. Thus, the resolution of the Union's threshold legal challenges at an early stage of the case would indisputably promote judicial economy far better than requiring the Chapter 11 case to proceed through a final reorganization plan before an appellate court can address these challenges and potentially unwind years of litigation. *In re Christian*, 804 F.2d 46, 48 (3d Cir. 1986) (order denying motion to dismiss was final and appealable because review of the order served judicial economy).[4]

Finally, in the specific, unusual circumstances of this case, the Union's appeal from the 1113(e) Decision would have preclusive effect on related subsequent litigation over the Debtors' employment terms and conditions—in particular, a motion for permanent relief under Section

---

[4]    The bankruptcy court's successive 1113(e) decisions themselves prove that the lower court substantively addressed the appellants' threshold legal and jurisdictional challenges to its authority to award interim relief only in its first 1113(e) decision and has thereafter relied on that initial analysis, which has not yet been reviewed by any appellate court.

1113(c) as well as successive 1113(e) motions seeking further interim modifications. Although appeals from routine Section 1113(e) orders authorizing interim relief would not ordinarily preclude further litigation under Section 1113(c) seeking permanent relief,[5] the Section 1113(e) order in this case is not at all ordinary. To the contrary, it is entirely unprecedented. Neither the Debtors nor the court below could identify a single case in which any court has granted interim relief under Section 1113(e) allowing a debtor to "modify" an employment term that a district court, under NLRA Section 10(j), had specifically ordered to be put into effect and maintained during the pendency of NLRB unfair labor practice proceedings. An appeal decision sustaining the Union's first argument—impermissible collateral review/attack on the Connecticut district court's 10(j) injunction—would preclude the bankruptcy court from granting permanent relief, as well as interim relief, from the same 10(j) injunction terms before the NLRB completes its unfair labor practice proceedings. As explained in more detail below, because jurisdiction to review the Connecticut district court's injunction lies solely with the Second Circuit Court of Appeals and the Supreme Court, the bankruptcy court has no authority whatsoever to review, modify, stay or attack the facilities' obligations under that injunction, whether on an "interim" or a "permanent" basis.

Moreover, if the Union prevails on its second ground for appeal—inapplicability of Section 1113 in the absence of a collective bargaining agreement—that legal conclusion will govern motions under 1113(c) for permanent relief as well as motions under 1113(e) for interim relief. Indeed, the better-reasoned authority holds that Section 1113(c) does not authorize debtors to reject statutory obligations under the NLRA that arise after a labor agreement expires. *See,*

---

[5]    The Code provides that the "implementation of … interim changes [authorized under subparagraph (e)] shall not render the application for rejection [under subparagraph (c)] moot." 11 U.S.C. § 1113(e). Thus, some courts have treated ordinary Section 1113(e) motions as nonfinal. *See, e.g., In re Allied Holdings, Inc.*, 376 B.R. 351, 354–57 (N.D. 2007); *In re Landmark Hotel & Casino, Inc.*, 872 F.2d 857, 860–62 (9th Cir. 1989). *But see In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 777–78 (S.D.N.Y. 1992) (Section 1113(e) order was final and appealable where it was of indefinite duration and no motion for permanent relief had been filed).

*e.g., In re Hostess Brands, Inc.*, 477 B.R. 378, 382 (Bankr. S.D.N.Y. 2012) (cited in 1113(e) Op. at 13–14) (relying on the plain language of paragraphs (a)–(d) and (f) to conclude that a bankruptcy court cannot authorize the rejection of employment terms under an expired labor agreement, where those terms persist by operation of law). *Accord In re Sullivan Motor Delivery, Inc.*, 56 B.R. 28, 28–31 (Bankr. E.D. Wis. 1985) (denying motions under 1113(c) and (e) where labor agreement had expired); *In re San Rafael Baking Co.*, 219 B.R. 860, 864–67 (9th Cir. BAP 1998) (reversing an administrative expense award because bankruptcy court had no authority whatsoever over employment terms maintained by statute after a labor agreement expired).

Because the admitted absence of a collective bargaining agreement in this case likely makes permanent relief under Section 1113(c) unavailable, successive Section 1113(e) motions provide the only alternative avenue for seeking the relief that is the central focus of the Debtors' Chapter 11 filing. And each such 1113(e) request will present the same threshold, jurisdictional obstacles that the Union raises here. In these unusual circumstances, failure to treat the 1113(e) Decision as final would allow manifest defects in the bankruptcy court's statutory authority under Section 1113(e) to repeat themselves throughout this bankruptcy case while constantly evading review. Indeed, the 1113(e) Decision permits the Debtors to seek such interim relief repeatedly, without prejudice, regardless of the harm to the Union and the employees. Yet, the Connecticut district court has already determined that the Union and its members suffer irreparable harm by having to live under the very employment terms that the facilities had unilaterally implemented and that the bankruptcy court's order now purports to authorize. *See supra* at 6–7.

Under this Circuit's functional, pragmatic view of finality, the bankruptcy court's Section 1113(e) order is final and appealable pursuant to 28 U.S.C. § 158(a)(1).

**II.    Alternatively, if the 1113(e) order is deemed interlocutory, this Court should grant leave to appeal under 28 U.S.C. § 158(a)(3) because the order involves controlling questions of law as to which there is substantial basis for a difference of opinion, and resolution of those issues will materially advance termination of both the Section 1113 litigation and the Chapter 11 case.**

- 15 -

In the event that the Court disagrees with the foregoing finality analysis and deems the 1113(e) order interlocutory, it should nonetheless grant the Union leave under 28 U.S.C. § 158(a)(3) to appeal that bankruptcy order. That provision does not set forth the standards for determining when to grant such leave, so courts in this Circuit look to the criteria under 28 U.S.C. § 1292(b). *See Jacobo v. BAC Home Loans, Servs., LP*, 477 B.R. 533, 537 (D.N.J. 2012) (citing *In re Bertoli*, 812 F.2d 136, 139 (3d Cir. 1987)). *Accord In re Enron Corp.*, Ch. 11 No. 01-16034, 2006 U.S. Dist. LEXIS 63223, *15–16 (S.D.N.Y. Sept. 5, 2006) (same criteria in Second Circuit). Under Section 1292(b), leave for an interlocutory appeal is appropriate where the order at issue: (1) involves a controlling question of law; (2) upon which there is substantial ground for difference of opinion as to its correctness; and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *Jacobo*, 477 B.R. at 537. The appellant should also demonstrate that extraordinary circumstances warrant the appeal. *Id.*

Applying these factors, district courts have entertained interlocutory appeals from Section 1113(e) orders in appropriate circumstances. *See Beckley Coal Mining Co. v. United Mine Workers of Am.*, 98 B.R. 690, 692–94 (D. Del. 1988) (granting leave to appeal interlocutory 1113(e) order to determine whether the debtor was required to have a pending motion for rejection on file in order to obtain interim relief); *In re Hoffman Bros. Packing Co., Inc.*, 173 B.R. 177, 181 (9th Cir. BAP 1994) (granting leave to appeal interlocutory 1113(e) order to determine whether court could award interim relief retroactively).

The Union's appeal in this case satisfies the requirements for an interlocutory appeal. The three questions on appeal are pure legal questions that the "reviewing court could decide quickly and cleanly without having to study the record." *Enron*, 2006 U.S. Dist. LEXIS 63223, *20 (internal quotation omitted). The Union is not challenging in this appeal the application of the Section 1113(e) standards to the facts presented at the hearing. *See supra* at 10–11. Rather, the Union is challenging the bankruptcy court's authority to act at all in the face of the contrary 10(j) injunction and in light of the expiration of the applicable CBAs. *Id*. The existence of the

- 16 -

injunction and the expiration of the CBAs are not factually disputed; only their legal
consequences are.

Similarly, even if the bankruptcy court did have authority to act, the Union contends that
the prior 10(j) litigation—including the stay application and appeals, which found that the 10(j)
injunction would not cause the facilities irreparable financial harm or require imminent closure—
should have precluded the court below from finding that the Debtor-facilities would be unable to
continue in business or would suffer irreparable financial harm absent the relief granted. *See
supra* at 7–8. The resolution of this issue preclusion/estoppel argument requires only that the
Court compare judicial decisions (and the arguments made in the prior courts) with the legal
issues to be determined under Section 1113(e). Although the Court will be reviewing the prior
judicial decisions to determine the precise issue litigated before and decided by those courts,
doing so is certainly no more onerous than reading judicial decisions to determine the substance
of the law. And this task will not require the Court to weigh evidence presented at the hearing,
scrutinize the factual record in this case, or determine whether the lower court properly applied
legal standards to the facts at bar. *Cf., In re Allied Holdings, Inc.*, 376 B.R. 351, 363 (N.D. Ga.
2007) (denying leave for interlocutory appeal where appellant simply challenged the application
of settled law to fact).

Moreover, each of the three appeal issues presented here would control the Debtors' 1113
litigation because of the jurisdictional and preclusive nature of the issues. *See supra* at 10–11.
For that very reason, the appeal "promises to advance the time for trial or shorten the time for
trial," *Enron*, 2006 U.S. Dist. LEXIS 63223 at *19 (internal quotations omitted), by eliminating
the need for trial entirely. Thus, the first and third factors justifying immediate appeal are easily
met here.

The remaining factor, substantial ground for a difference of opinion on the correctness of
the order below, is met either when there is conflicting authority on the issue or the issue is
difficult and of first impression. *Id.* Resolution of that question here requires a peek at the

substance of the Union's appeal. As shown below, the indisputably strong merits of the Union's

arguments on appeal demonstrate that substantial grounds exist for a difference of opinion as to

the correctness of the 1113(e) Decision.

### A. There are substantial grounds to disagree with the bankruptcy court's holding that it did not collaterally review or attack the 10(j) injunction.

Although the bankruptcy court appropriately recognized that the Union's argument

contesting the bankruptcy court's jurisdiction as an impermissible collateral attack or review of

the 10(j) injunction was "not without merit," the court ultimately and erroneously determined

that the injunction merely "return[ed] the parties to status quo," which "may be subject to interim

relief under § 1113(e)." 1113(e) Op. at 18. That conclusion misunderstands the structure of the

NLRA, the difference between contractual and statutory obligations, and the limited avenues for

judicial review of a 10(j) injunction.

The NLRA empowers the NLRB "to prevent any person from engaging in any unfair

labor practice … affecting commerce." 29 U.S.C. § 160(a). That power is a "regulatory power"

that the NLRB continues fully to enjoy with respect to an employer who files for bankruptcy

protection. 11 U.S.C. § 362(b)(4)(exempting proceedings to enforce a governmental unit's

regulatory power from the automatic stay); *NLRB v. 15th Ave. Iron Workers, Inc.*, 964 F.2d

1336, 1337 (2d Cir. 1992); *NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 832–35 (9th Cir.

1991); *NLRB v. P\*I\*E Nationwide, Inc.*, 923 F.2d 506, 511–12 (7th Cir. 1991); *NLRB v. Edward

Cooper Painting Inc.*, 804 F.2d 934, 939–43 (6th Cir. 1986); *Ahrens Aircraft, Inc. v. NLRB*, 703

F.2d 23, 24 (1st Cir. 1983); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 292–93 (5th Cir. 1981).

The Board's power to prevent and remedy unfair labor practices, moreover, is exclusive

and "shall not be affected by any other means of adjustment or prevention that has been or may

be established by agreement, *law, or otherwise* … ." 29 U.S.C. § 160(a) (emphasis added). The

Board's power to remedy an employer's violations of the NLRA remains exclusive after an

employer files a bankruptcy petition. *See Nathanson v. NLRB*, 344 U.S. 25, 30 (1952).

The Board does not have jurisdiction to prescribe the substantive terms of labor

agreements; the Act reserves to private parties the power to reach agreement over the terms and conditions of employment. *E.g., Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 201 (1991) (like other employment terms, "under the NLRA arbitration is a matter of consent … that … will not be imposed upon parties beyond the scope of their agreement"). Nonetheless, the Board's remedial power to address statutory violations includes the power to remedy employers' unilateral changes to employment terms, because those unilateral changes defeat the obligation under Section 8(a)(5) to bargain in good faith. *NLRB v. Katz*, 369 U.S. 736, 743–48 (1962). The Board will typically do so by ordering employers to cease from unilaterally changing wages or other employment terms, and enforcement of those orders requires employers, as a statutory matter, to restore the terms that were in effect prior to the unilateral change. *Id.* at 737 n.3 (setting forth the terms of the Board order). Where the NLRB orders particular terms restored as a remedy of a statutory violation, the source of the obligation enforcing those terms is statutory, even when the terms are coincident with terms previously embodied in an agreement. *See Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co. Inc.*, 484 U.S. 539, 547 (1988) (distinguishing statutory and contractual obligations); *Litton Financial*, 501 U.S. at 205–08 (providing a detailed analysis of that distinction).

The Board's remedial powers include the "power, upon issuance of [an unfair labor practice] complaint … to petition any United States district court … for appropriate temporary relief or restraining order," which the district court has jurisdiction to issue "as it deems just and proper." 29 U.S.C. § 160(j). As this Circuit and the Connecticut district court have recognized, the "clear purpose" of the Board's power to seek an injunction under Section 10(j), is "not to limit the scope of the Board's authority to decide violations [of the NLRA], but to preserve its powers to do so by giving the NLRB an opportunity to seek an injunction of alleged violations before an injury becomes permanent or the Board's remedial purpose becomes meaningless." *Chester ex rel. NLRB v. Grane Healthcare Co.*, 666 F.3d 87, 96 (3d Cir. 2011). *Accord id.* at 97–98 (purpose of 10(j) proceedings is to preserve "the Board's remedial power pending the

- 19 -

outcome of its administrative proceedings," and to "ensure that the Board would be able to exercise effectively its ultimate remedial power") (internal quotations omitted). *See* 10(j) Op. at 15, 16 n.10. Thus, like administrative proceedings to adjudicate the merits of unfair labor practice allegations, Section 10(j) proceedings initiated by the Board to preserve its remedial powers are also exercises of regulatory power by a governmental unit and thus equally exempt from the bankruptcy stay. *See supra* at 18–19.

The federal courts of appeals have exclusive jurisdiction to hear appeals from the merits of final Board orders on the merits of unfair labor practice charges, 29 U.S.C. §§ 160(e)-(f), and jurisdiction also lies exclusively in the courts of appeals to hear appeals from the grant or denial of a district court injunction issued under Section 10(j). *See Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 245 (3d Cir. 1998) (finding jurisdiction under 28 U.S.C. §§ 1291, 1292(a)(1) and 29 U.S.C. 160(j) to review a 10(j) injunction).

In these circumstances, the teachings of *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991), apply with full force. Under *MCorp* and its progeny, where Congress vests an administrative agency with exclusive jurisdiction over a particular matter and confines judicial review of the agency's decisions to the federal courts of appeals, bankruptcy courts may not collaterally review or attack the agency's orders by interfering in any way with those regulatory proceedings, including any interim orders issued in the course of those proceedings. *Id.* at 40–42. *See also San Rafael Baking*, 219 B.R. at 866 (relying on *MCorp* to dismiss order requiring administrative payment of health benefit contributions required by a labor agreement that expired, because those contributions were required postexpiration, if at all, only as a statutory matter under the NLRA, and the NLRB had exclusive jurisdiction over that matter); *In re FCC*, 217 F.3d 125, 133–41 (2d Cir. 2000) (issuing mandamus to bankruptcy court directing it to vacate its orders that interfered with the FCC's licensing decisions); *In re NextWave Pers. Commc'n, Inc.*, 200 F.3d 43, 50–56 (2d Cir. 1999) (reversing bankruptcy court orders that interfered with FCC's licensing decisions by allowing debtor to avoid over $3 billion

in auction bid price); *In re Calpine Corp.*, 337 B.R. 27, 32–39 (S.D.N.Y. 2006) (dismissing

motion to reject regulated energy contracts and vacating restraining order against FERC

proceedings to compel energy wholesaler to perform under the regulated contracts); *In re NRG

Energy, Inc.*, No. 03-Civ.-3754 (RCC), 2003 U.S. Dist. LEXIS 11111 (S.D.N.Y. June 27 2003)

(dismissing motion for relief from FERC orders to perform under regulated energy contracts).[6]

The bankruptcy court resisted this conclusion based on its view that the 10(j) injunction

"affects property of the Debtors' estate" and Section 1113(e) "expressly grants the bankruptcy

court authority to modify CBA terms on an interim basis." 1113(e) Order at 17–18. These points

misunderstand the law.

On the first point, the Second Circuit's decision in *FCC* and *NextWave* make perfectly

clear that regulatory actions that affect the estate are no less regulatory and no less immune from

collateral attack by bankruptcy courts.[7] Where review of those agency actions lies exclusively in

the courts of appeal, bankruptcy courts may not collaterally review those actions or otherwise

interfere with them or undermine them. Here, the 10(j) proceedings and injunction are part and

parcel of the Board's regulatory arsenal to remedy unfair labor practices. *See supra* at 19.

Review of that injunction lies exclusively in the Second Circuit and the Supreme Court, and the

facilities in fact have an appeal currently pending before the Second Circuit. *See supra* at 8. The

1113(e) order gives the Debtor-facilities permission to do precisely what the Connecticut district

court forbade: provide employment under terms less favorable to employees than those that

---

[6]      The courts of appeals, of course, may review agencies' actions with respect to debtors
when their jurisdiction is properly invoked. *See FCC v. NextWave Pers. Commc'n, Inc.*, 537 U.S.
293, 299 (2000); *NextWave Pers. Commc'n, Inc. v. FCC*, 254 F.3d 130, 142–49 (D.C. Cir. 2001)
(Second Circuit's prior determinations that bankruptcy actions interfered with FCC's exclusive
jurisdiction to regulate the radio spectrum did not preclude challenge in the court of appeals on
the merits of the lawfulness of the agency action).

[7]      Orders from an administrative agency requiring a debtor to remedy a violation of law
retain their regulatory character, and their exemption from the automatic stay, even where they
"may have as great or greater financial consequences than direct money judgments." *Brock v.
Myrsville Body Works, Inc.*, 829 F.2d 383, 389 (3d Cir. 1987).

existed on June 16, 2012. The bankruptcy court nonetheless believed that it could provide interim relief from the restored "status quo." 1113(e) Order at 18. But the 10(j) injunction did not merely require the June 16, 2012, terms to be restored for a fleeting moment; it required them to be restored until the Board concludes its unfair labor practice proceedings with these facilities. *See supra* at 6, 19. Because the Board has not yet done so, the 1113(e) order directly interferes with the 10(j) injunction.

On the second point, while the bankruptcy court correctly notes that Section 1113(e) empowers it to authorize "interim changes in the terms, conditions, wages, benefits, or work rules *provided by [a] collective bargaining agreement*," it fails to explain how the terms of the 10(j) injunction were so provided. 11 U.S.C. § 1113(e) (emphasis added). Under the Supreme Court's decisions in *Litton Financial*, *Advanced Lightweight*, and *Katz*, the terms of the injunction were not provided by any collective bargaining agreement. In fact, they were three steps removed from an agreement.[8] Under the *Katz* postexpiration doctrine, the June 16, 2012, terms were provided by operation of law under the NLRA itself, and, as *Litton* and *Advanced Lightweight* make clear, such statutory obligations are not terms of an agreement. But because the NLRB had reasonable cause to believe that the facilities did not abide by their statutory obligations, it sought the extraordinary remedy of a 10(j) injunction. So the terms of the injunction are not simply statutory obligations, they are terms of a judicial order, enforceable by contempt.

**B. There are substantial grounds to disagree with the bankruptcy court's holding that it had authority under Section 1113(e) to provide interim relief after the CBAs expired.**

---

[8]     As noted above, the facilities originally implemented modified employment terms and conditions, at odds with their CBAs, back in 2010, even before those contracts expired.  After the CBAs ended, the facilities implemented a set of additional modifications in employment terms and conditions in June 2012, during the pendency of NLRB proceedings challenging the unlawful 2010 modifications, and following negotiations with the Union over new contracts. Thus, whatever package of employment conditions existed at the facilities as of June 16, 2012—the reference date for specific terms prescribed by the 10(j) injunction—was clearly not the "status quo" defined by the old labor agreements at the time of their expiration.

The lower court also held that Section 1113(e) provides authority to bankruptcy courts to modify terms of an expired agreement. 1113(e) Op. at 12–15. In reaching this conclusion, the court relied principally on *In re Karykeion, Inc.*, 435 B.R. 663 (Bankr. C.D. Cal. 2010), and *Hostess, supra*. Although the opinion below also cited *Sullivan Motor Company*, 1113(e) Op. at 13, it failed to address that court's reasoning which correctly distinguished contractual from statutory obligations. *See* 56 B.R. at 30. And it entirely overlooked the well-reasoned decision in *San Rafael Baking*, 219 B.R. at 864-67.

The analyses of Section 1113(e) in *Karykeion* and *Hostess* both suffer the same defect. They attend to only some of the statutory language—the phrase, "a period when the collective bargaining agreement continues in effect"—while overlooking the language that actually confers authority: "the court, after notice and a hearing, *may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by [a] collective bargaining agreement*." 11 U.S.C. § 1113(e) (emphasis added). Under *Litton Financial*, a postexpiration term is provided by a collective bargaining agreement "only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." 501 U.S. at 206. The strikers' right to get paid for postexpiration, postpetition work under the terms that existed on June 16, 2012, meets none of these criteria and thus is not a right "provided by any collective bargaining agreement."

The *Karykeion* and *Hostess* courts also erred in their construction of the period when a CBA "continues in effect." Those courts believed that the only way for a CBA to "continue in effect" after expiration is by operation of law. But here, again, the Supreme Court's decision in *Litton Financial* demonstrates the error: "a collective-bargaining agreement might be drafted so as to eliminate any hiatus between expiration of the old and execution of the new agreement, or to remain in effect until the parties bargain to impasse." 501 U.S. at 201 & 201 n.2 (citing cases

involving agreements that automatically renewed until a new agreement was reached or for a reasonable time to negotiate a new agreement). Thus, parties can and do fashion collective-bargaining agreements that, unlike the CBAs here, continue in effect beyond their expiration dates by their own terms, whether through "evergreen" clauses or through more limited renewal clauses like those considered in *Litton Financial*.

Under the best reading of Section 1113(e)—and the only reading that respects both statutory clauses at issue in this case—that limited, emergency relief provision is operative when a CBA has not yet expired, or when it has expired but has been extended, by its own terms and as a matter of contract, beyond the CBA's original expiration date; Section 1113(e) does not apply, however, when there are no employment terms that remain in force as a matter of agreement, under *Litton Financial*, *Advanced Lightweight*, and *Katz*, and where the employment terms at issue have legal force and effect only through some nonconsensual means, such as a statutory obligation or judicial order.

Here, the Debtors' CBAs expired in March 2011 and did not renew or extend beyond that date by their own terms. *See supra* at 5. No subsequent contracts were entered into regarding employment terms and conditions at the five facilities. The specific employment terms mandated by the Connecticut district court's December 2012 10(j) injunction are required as a matter of law. These nonconsensual, court-imposed obligations fall beyond the reach of Section 1113(e).

**C.  There are substantial grounds to disagree with the bankruptcy court's holding that the prior 10(j) litigation left open the issues to be determined on this 1113(e) motion.**

The bankruptcy court rejected the issue preclusion objection for three reasons, mistakenly concluding that (1) the Connecticut district court "did not, and was not asked to, determine the Debtors' financial ability to operate the facilities"; (2) the "finality requirement of issue preclusion has not been satisfied by the hearing before the District Court"; and (3) "the financial issues argued before [the bankruptcy court] are not the same as presented to the District Court in defense of the § 10(j) Injunction … ." 1113(e) Op. at 20. These erroneous conclusions

misunderstand the governing legal standards.

Contrary to the bankruptcy court's conclusion, the Connecticut district court was required to—and in fact did —determine the Debtors' financial ability to operate the facilities under the terms of the injunction. In deciding whether an injunction under Section 10(j) is "just and proper" courts in this Circuit "weigh the same kinds of harms that factor into the traditional [four-part] equitable test." *Chester*, 666 F.3d at 99. Under that test, courts weigh the benefits of injunctive relief "against the harms it may produce." *Id.* Specifically, they "do not only weigh the harms to the Board, but also the harms injunctive relief poses to the employer." *Id.* at 99. The Connecticut district court correctly applied this legal standard and, after conducting a hearing and reviewing an extensive record, rejected the Debtors' claims of "potential financial calamity" that would "significantly harm [their] financial stability." *See supra* at 7.

The facilities disagreed and sought a stay from that court, contending that the purportedly "unsustainable financial consequences" of the 10(j) injunction would inevitable force them "to close altogether." *See supra* at 7. The district court again rejected that argument, as did the Second Circuit and the Supreme Court (both through Justice Ginsburg, sitting on Circuit, and through the full Court). *See supra* at 7–8. These courts correctly applied the equitable standards under Section 10(j) and under the procedural rules governing stays—both of which examine irreparable injury to the facilities—and rejected the facilities' contentions. *See Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987) (applying the traditional equitable standards to stays).[9] Because the law governing 10(j) injunctions and stay requests both required the courts in the 10(j) proceedings to determine whether the employment terms ordered by the 10(j) injunction would cause the facilities irreparable financial harm, leading to their closure, as they claimed, this issue was actually litigated in the prior proceedings.

There is also substantial basis to disagree with the bankruptcy court's finality

---

[9]    The rules governing stays include Fed. R. Civ. P. 62(c), Fed. R. App. P. 8, and Sup. Ct. R. 23.

conclusions. This Circuit, for example, has grounded its jurisdiction to review a 10(j) order at least in part on 28 U.S.C. § 1291, which governs appeals from final orders. *See Hirsch*, 147 F.3d at 245. Following *Hirsch*, when the facilities appealed the 10(j) injunction, they invoked 28 U.S.C. § 1291 as the principal basis for jurisdiction over their appeal, and 28 U.S.C. § 1292(a)(1), governing interlocutory injunctions, only in the alternative. Dkt. 54-2. *Hirsch* and the facilities' notice of appeal make sense: outside of the bankruptcy context, a final order under 28 U.S.C. § 1291 is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (internal quotations omitted). Here, the grant of the 10(j) injunction ends the litigation on the merits of the Board's right to that extraordinary remedy. Although the underlying litigation over the unfair labor practices themselves continues, the right to the specialized, statutory remedy under Section 10(j) is complete. Because federal district courts have a narrowly circumscribed role in unfair labor practice proceedings, and their 10(j) orders simply preserve the Board's remedial authority, issuance of the Connecticut district court's injunction left nothing for it to do but to execute its judgment.

Finally, there is substantial basis to conclude that the bankruptcy court erred in its determination that the financial issues under 1113(e) differ materially from those argued in the 10(j) proceedings. The two proceedings raised precisely the same issue: *would imposition of the June 16, 2012, employment terms cause the facilities irreparable harm and lead to their imminent closure?* The facilities fully litigated that very issue before the Connecticut district court and eleven other Article III judges, all of whom determined that the facilities' claims of irreparable harm were not well founded. *See supra* at 7–8. The facilities then raised the same issue again in the bankruptcy court below, arguing that the June 16, 2012, employment terms would prevent them from "continuing their business" and would cause "irreparable damage to the estate." But the Debtors' "business" is the operation of the facilities, and their "estate" is their financial situation, comprising their assets, revenues, expenses and obligations. Their arguments

in the 10(j) proceedings—that the facilities would be forced to close under imminent financial strain—are substantially the same as their arguments in the 1113(e) proceedings. They lost those arguments in the prior litigation and, out of respect for the judgments in that litigation, must lose them again here.

## CONCLUSION

For all the foregoing reasons, the Union respectfully asks this Court to accept the Union's appeal for immediate review.

Respectfully submitted,

/s/ Susan J. Cameron
LEVY RATNER, P.C.
Susan J. Cameron (033942006)
Suzanne Hepner (admitted *pro hac vice*)
80 Eighth Avenue, 8th Floor
New York, New York 10011-5126
Phone: (212) 627-8100
Facsimile: (212) 627-8182

JAMES & HOFFMAN, P.C.
Kathy L. Krieger (admitted *pro hac vice*)
Darin M. Dalmat (admitted *pro hac vice*)
1130 Connecticut Ave., NW, Suite 950
Washington, DC 20036-3975
Phone: (202) 496-0500
Facsimile: (202) 496-0555

Date: December 5, 2013